Dear Mr. Hughes:
You have requested an opinion of this office regarding the applicability of Act 413 of 1981 ("Act 413") to certain lands within the State of Louisiana. Specifically, you have asked whether Act 413 grants the Governor of Louisiana the authority to authorize concurrent jurisdiction with the United States over "lands under the administration of the National Parks [sic] Service"[1]
("NPS") controlled by the NPS as of the date of enactment on July 17, 1981, or whether Act 413 provides the Governor with such authority on a continuing basis.
The reason for such shared jurisdiction was succinctly set forth in an agreement between the State and the United States in 1982, to wit:
 [I]t is to the mutual advantage of both the United States and the State of Louisiana to develop a uniform system of concurrent jurisdiction for law enforcement activities within the State of Louisiana inasmuch as the development of such a uniform system will result in a reduction in the amount of law enforcement response time, will diminish the cost thereof to the public, and will promote the public welfare and enjoyment of the areas.[2]
However, it is the opinion of this office, for the reasons set forth below, that Act 413 only applies to those lands that were held in "proprietorial" or "exclusive" jurisdiction by the United States as of July 17, 1981. As such, it is further the opinion of this Office that lands donated to the United States since July 17, 1981, could not be included within an agreement by the Governor for concurrent jurisdiction with the United States. *Page 2 
Our opinion rests on a lexicographical analysis of Act 413, as well as on an in pari materia analysis of that Act. Act 413 is codified at Title 52, Section 4 of the Louisiana Revised Statutes and reads as follows:
 Jurisdiction over lands under the administration of the National Parks Service
 A. The governor, upon application made to him on behalf of the United States, is authorized to enter into a written agreement to cede concurrent jurisdiction to the United States over lands under the administration of the National Parks Service over which the United States now has proprietorial jurisdiction.
 B. The governor, upon application made to him on behalf of the United States, is authorized to enter into a written agreement to accept concurrent jurisdiction from the United States over lands under the administration of the National Parks Service over which the United States now has exclusive jurisdiction.
La.R.S. 52:4 (emphasis added).
The operative word in this statute, for the purposes of this opinion, is the word "now." It is clear from the use of the word "now" that the Legislature intended for the Act to only apply to lands in the proprietory or exclusive jurisdiction of the United States as of the date of the enactment of Act 413. This conclusion is supported by the next section of Title 52, which provides as follows:
 Jurisdiction over lands under the administration of the United States Department of Justice
 The governor, upon application made to him on behalf of the United States, is authorized to enter into a written agreement to cede concurrent jurisdiction to the United States over lands, waters, and improvements presently or hereafter acquired, leased, occupied, or controlled by or for the United States for use by the Department of Justice or any of its component agencies or bureaus for the operation of correctional facilities.
La.R.S. 52:5 (emphasis added).
It is clear from La.R.S. 52:5 that the Legislature intended for this law to apply to prospective and retrospective acquisitions of property by the United States. The same is not true of the language of La.R.S. 52:4. That law clearly only applies to retrospectively-acquired property. It is clear from the language of La.R.S. 52:5 that the *Page 3 
Legislature knew how to make a similar law apply to property as yet unacquired.[3] When R.S. 52:4 and R.S. 52:5 are read together, it is clear that, as evidenced by the latter, the Legislature could have made the former applicable to after-acquired property, but it did not. Thus, it is our opinion that Act 413 was intentionally phrased to apply only to property over which the NPS exercised proprietorial or exclusive jurisdiction as of July 17, 1981, the date of its enactment.
In your request letter, you also state that, "[i]f the present Louisiana law does not cover lands acquired after 1981, we would seek to have the law amended to include those lands." In this regard, our Office can offer no assistance. Because the authority that you reference was legislatively given, legislative action is the only means by which such authority may be expanded. As the Department of Justice is part of the executive branch of State government, we do not have the authority to assist you in this matter. We recommend that you seek legislative assistance should you wish to pursue such an expansion of the Governor's authority with respect to concurrent jurisdiction over NPS lands.
We trust that this analysis adequately responds to your request. Should you have any further questions or concerns, please do not hesitate to contact this office.
 Sincerely,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ Ryan M. Seidemann Assistant Attorney General
 JDC/RMS/tp
[1] Act 413, Sec. 1.
[2] Cooperative Agreement for Concurrent Legislative Jurisdiction at Areas of the Jean Lafitte National Historical Park within the State of Louisiana, signed Jan. 26, 1982 (copy on file with the Louisiana Department of Justice).
[3] It is important to note that, although this conclusion is readily apparent from a comparison of La.R.S. 52:4 to La.R.S. 52:5, there has been no jurisprudential or academic analysis of these laws. This, this matter is res nova.